Francisco Acevedo Hernández et al., Plaintiffs and Appellees, *v.* Manuel V. Domenech, Treasurer of Puerto Rico et al., Defendants and Appellants.

No. 6930. Argued November 12, 1936.—Decided January 11, 1938.

*B. Fernández García*, Attorney General, *R. Cordovés Arana*, Assistant Attorney General, and *Carlos Santana Becerra* for appellants. *Largé, Acevedo & Lecároz* for appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

In July, 1932, plaintiffs brought an action to establish the nullity of a certain mortgage and of a pending summary foreclosure proceeding. As a first cause of action they alleged in substance that the defendant, Domenech, who had instituted the summary foreclosure proceeding as a pledgee and holder of a promissory note, payable to El Banco Industrial de P. R. or its order, and secured by mortgage, had not attached to his petition the promissory note nor stated facts sufficient to show ownership thereof and that plaintiff, Acevedo, as intervener in another action, had obtained an order forbidding foreclosure of the mortgage by the mortgagee, El Banco Industrial de Puerto Rico, pending a determination of certain questions concerning the matter of intervention, all of which appeared from a marginal note in the registry of property and from a registrar's certificate in the foreclosure proceeding. As a second cause of action plaintiffs alleged: that the mortgage executed by Acevedo for himself and as attorney in fact of his wife, Pilar Defilló, was in fact to secure the payment of a debt due to El Banco Industrial de Puerto Rico from the mercantile firm, F. Elizalde Lecároz & Co., notwithstanding Acevedo's statement in the instrument itself that he had received as a loan from the bank the amount specified in the note which he had signed; that the plaintiff, Pilar Defilló, had executed in favor of her husband a power of attorney authorizing him to borrow money and to execute mortgages as security for the payment of obligations so contracted, but had never authorized him to secure the indebtedness of others; that the plaintiff, Pilar Defilló, had refused to sign the note and had not authorized her husband to waive homestead right; that plaintiffs had not met the demand for payment issued in the summary foreclosure proceeding because they owed the Treasurer of Puerto Rico nothing. As a third cause of action they alleged that the mortgage was a nullity because the notary before whom it was executed and one of the witnesses were first cousins.

In a supplemental complaint, plaintiffs alleged that at a foreclosure sale in the mortgage foreclosure proceeding instituted by defendant Domenech, as Treasurer of Puerto Rico, the mortgaged property had been awarded to the said Treasurer of Puerto Rico for the sum of $300 which had been credited on the account of plaintiffs and that plaintiffs, on the day of the foreclosure sale, had vacated the premises in order to avoid eviction therefrom by the marshal. There were other averments as to the rental value of the property. The prayer of this supplemental complaint was for recovery of the property or the value thereof with rents and profits from the date of the foreclosure sale.

In a second supplemental complaint, plaintiffs alleged that at the instance of the Treasurer, petitioner in the foreclosure proceeding, the court had vacated the foreclosure sale referred to in the first supplemental complaint, had ordered the advertisement of a second foreclosure sale and that, at this second foreclosure sale, the mortgaged property had again been awarded to the Treasurer of Puerto Rico for $300 to be credited on account of plaintiffs. In this second supplemental complaint, plaintiffs prayed for an adjudication as to the nullity of the second foreclosure sale and for recovery of the property with rents and profits as in the first supplemental complaint.

The bank moved to dismiss the complaint as to it and later moved successively to strike the first and second supplemental complaints. The overruling of these motions is assigned as error. The theory of the three motions was that a receiver cannot be sued without leave of the court which appointed him.

There is, of course, no doubt about the general rule where an action would interfere with the possession and control of property in the hands of a receiver. If plaintiffs had relied upon the averments as to the invalidity of the mortgage as the basis of a prayer for a money judgment against the bank, the case would have come within the rule

invoked by the bank. The only purpose of the averments as to invalidity of the mortgage, however, was apparently to obtain an adjudication as to the nullity of the summary foreclosure proceeding which could not in any way interfere with the possession or control of any property in the hands of the receiver. Hence, the case does not come within the rule, but rather within a well recognized exception thereto. 53 Corpus Juris, 332, sec. 546; 23 Ruling Case Law 124–126, sec. 132, 133.

The district court after a trial on the merits dismissed the cross complaint, adjudged the summary foreclosure proceeding and the foreclosure sale thereunder to be null and void, provided for a return of the mortgaged property to plaintiffs together with fifty dollars per month as the rental value thereof from July 5, 1932, or in lieu thereof $4,000 as the value of the property itself with interest at 6 per cent from July 5, 1932, until paid and ordered cancellation of entries made in the registry of property as the result of the summary foreclosure proceeding and sale without special pronouncement as to costs.

Sections 1766, 1768 and 1771 of the Civil Code (1930 ed.) read as follows:

"Section 1766.—The creditor must take care of the thing given in pledge with the diligence of a good father of a family; he has a right to recover the expenses insurred for its preservation and is liable for its loss or deterioration, in accordance with the provisions of this Code.

"Section 1768.—As long as the thing given in pledge is not taken by eminent domain, the debtor continues to be the owner thereof.

"Nevertheless, the creditor may exercise the actions which pertain to the owner of the thing pledged, in order to reclaim or defend it against a third person.

"Section 1771.—(Section 1773, Civil Code of 1902, as amended by act No. 48, 1930, p. 368.)—A creditor to whom the debt has not been paid at the proper time may proceed, before a notary, to alienate the pledge. This alienation must necessarily take place at public auction, and with the citation of the debtor and the owner of the

pledge, in a proper case. If the pledge should not have been alienated at the first auction, a second one, with the same formalities, may be held; and should no result be attained, the creditor may become the owner of the pledge. In such case he shall be obliged to give a discharge for the full amount of his credit."

The district judge based his judgment as to the nullity of the foreclosure proceeding on the fact that the pledgor had not parted with his ownership of the pledge and upon the further fact that the pledgee had not become the owner thereof in the manner prescribed by Section 1771. The question, however, is not whether the pledgee was the absolute owner of the promissory note pledged as collateral security, but rather whether he had acquired as pledgee an interest in the note sufficient to support an action by him in his own name to enforce the collection thereof.

By the terms of Section 1766, the pledgee is required to take care of the thing pledged and is made responsible for the loss or deterioration thereof. Under Section 1768 he "may exercise the actions which pertain to the ownership of the thing pledged, in order to reclaim or defend it against a third person." Section 51 of the Code of Civil Procedure, however, provides that:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this Code. Appearance in court shall be made through an attorney legally empowered to exercise his profession under the provisions of this Law."

If, therefore, the pledgee is the real party in interest, the action must be brought in his name. When the pledgor of a negotiable instrument parts with the possession thereof, he also parts with his power of control over it. That power of control passes with the transfer of possession to the pledgee who, by reason of his responsibility as well as by the nature of the contract of pledge, acquires a special interest in the note itself. He not only has the right to bring an action on the note after maturity, but, in certain circumstances, it becomes his duty to bring such an action and a neglect of that

duty may render him liable for any loss or damages sustained by the pledgor. It was not necessary that the pledgee should be the absolute owner of the note or of the mortgage in order to institute a summary foreclosure proceeding. See: 12 Manresa 392, 393; 21 Ruling Case Law, 666, 667; 49 Corpus Juris, 1019, 1020, 1028, 1029; *Kelly v. Carmichael,* 117 So. 67; *Elk Valley Coal Co. v. Lexington Bank,* 163 S. W. 766.

■■ Ordinarily, of course, the transferee of a note payable to order and secured by mortgage must exhibit the note duly endorsed when he institutes a summary foreclosure proceeding. The endorsement of such a note, however, is not necessary in order to constitute a contract of pledge. 47 C. J. 919, section 47 and cases cited in note 95. Hence, a pledgee, if he exhibits other documentary evidence sufficient to establish his right to sue on the note and to foreclose the mortgage, should not be required to produce a formal endorsement by the pledgor. In the instant case, the pledgee alleged that he was the holder of the note which had been delivered to him by the payee as collateral security. The mortgage attached to the petition for foreclosure contained a verbatim copy of the note. Attached to the petition was a certificate issued by the receiver of the bank to the effect that the note had been pledged August 9, 1929, by the bank to the Treasurer of Puerto Rico as security for the deposit of money belonging to the People of Puerto Rico. The purpose of this certificate, as set forth therein, was to enable the Treasurer of Puerto Rico to exhibit the same in the mortgage foreclosure proceeding. This, we think, was enough to relieve the Treasurer from the necessity of exhibiting a formal endorsement of the note.

■■ It did not appear from the term of the mortgage that the notary and one of the witnesses were first cousins or otherwise related within the fourth degree of consanguinity. It did appear affirmatively from the face of the mortgage that the consideration for the note was a loan and

plaintiffs admitted in their complaint that Acevedo had been authorized to borrow money and to execute mortgages to secure the payment thereof. The temporary injunction had been issued some two years after the date of the pledge. It did not forbid the use of the note as collateral security nor the foreclosure of the mortgage by a pledgee. In any event, it was not retroactive and did not forbid foreclosure of the mortgage by a pledgee who had acquired an interest in the note and in the mortgage more than a year before the date of the temporary injunction. The note was pledged as collateral security shortly after execution and long before maturity. The pledgee had no notice of the fact that the notary and one of the witnesses were first cousins nor of the fact, if it was fact, that the consideration for the note was not a loan as expressly stated in the mortgage itself. He was not put upon inquiry as to the possibility of subsequent litigation between the mortgagors and the bank. Bad faith is never presumed and in the absence of anything to show that the Treasurer had any reason to suspect the existence of any defect in the note or in the mortgage it was not incumbent on him to plead and establish his good faith as a defense. *Pagán* v. *Sellés*, 29 P.R.R. 764; *Heirs of Torres* v. *Torres*, 29 P.R.R. 847; *Fragoso* v. *Marxuach*, 31 P.R.R. 187; and *Hernández* v. *Hernández*, 31 P.R.R. 643, are not in point.

Where it appears from the face of a complaint that the defendant as a pledgee was in the position of a *bona fide* holder, plaintiff must go further, we think, and show notice or plead and establish facts sufficient to put defendant upon inquiry as to matters affecting the payee's right to recover on the note or to foreclose a mortgage given to secure the payment thereof. In the absence of any such averment or proof it is not incumbent on defendant to plead or to prove the want of such notice or the non-existence of circumstances sufficient to put him upon inquiry.

In the absence of anything to show the existence of a homestead either at the time when the wife executed the

power of attorney in favor of her husband or at the time when the husband executed the mortgage, the question as to whether the wife had authorized a waiver of the homestead right does not demand serious consideration.

The judgment appealed from must be reversed and the action will be dismissed.

Mr. Chief Justice Del Toro and Mr. Associate Justice Córdova Dávila took no part in the decision of this case.